UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

No. 9:18-cv-81277-Rosenberg/Reinhart

ADT LLC,

     Plaintiff,

v.

ADAM D. SCHANZ, ALDER
HOLDINGS, LLC, et al

     Defendants.

_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendants, through their undersigned counsel and pursuant to Fed. R. Civ. P. 56(d)(1), file their Answer and Affirmative Defenses to Plaintiffs' Amended Complaint (DE 7) and state:

## ANSWER

1. Defendants admit that the action *ADT, LLC v. Alarm Protection Florida,* LLC, No. 9:15-cv-80073 was settled on May 24, 2017.  Defendants deny all other allegations in Paragraph 1 and demand strict proof thereof.

2. Defendants have no knowledge of the allegations of Paragraph 2 and thus deny those allegations and demand strict proof thereof.

3. Defendants admit the allegations of Paragraph 3.

4. In response to Paragraph 4, Defendants admit that Adam Schanz is the ultimate owner of each of the LLC Defendants.  Defendants also admit that each of the LLC Defendants is a citizen of Utah.  Defendants deny all other allegations in Paragraph 4 and demand strict proof thereof.

1

5.  Defendants admit the allegations of Paragraph 5.

6.  Defendants admit the allegations of Paragraph 6.

7.  In response to Paragraph 7, Defendants deny the allegations and also deny that Alder Protection Holdings, LLC is a party to this action.

8.  In response to Paragraph 8, Defendants admit that Alder Protection Technology LLC is a Utah limited liability company.  Defendants admit the allegations in the second sentence of Paragraph 8.  Defendants deny the allegations of the third sentence of Paragraph 8 and demand strict proof thereof.

9.  Defendants admit the allegations of Paragraph 9.

10. In response to Paragraph 10, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

11. In response to Paragraph 11, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

12. In response to Paragraph 12, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

13. In response to Paragraph 13, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

14. In response to Paragraph 14, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

15. In response to Paragraph 15, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

16. In response to Paragraph 16, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

17. In response to Paragraph 17, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

18. In response to Paragraph 18, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

19. In response to Paragraph 19, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

20. In response to Paragraph 20, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

21. In response to Paragraph 21, Defendants admit the allegations, with the exception that the address for Corporation Service Company is 10 West South Temple, Suite 1701, Salt Lake City, Utah 84133.

22. In response to Paragraph 22, Defendants admit that ADT has alleged damages that exceed the jurisdictional amount, but deny that ADT is entitled to any damages.

23. Defendants deny the allegations of Paragraph 23 and demand strict proof thereof.

24. In response to Paragraph 24, Defendants admit that ADT sued Defendants in 2015 in the case styled *ADT, LLC v. Alarm Protection Florida,* LLC, No. 9:15-cv-80073. Defendants deny all other allegations of Paragraph 24 and demand strict proof thereof.

25. Defendants admit the allegations of Paragraph 25.

26. Defendants deny the allegations of Paragraph 26 and demand strict proof thereof.

27. Defendants deny the allegations of Paragraph 27 and demand strict proof thereof.

28. Defendants deny the allegations of Paragraph 28 and demand strict proof thereof.

29. Defendants deny the allegations of Paragraph 29 and demand strict proof thereof.

30. Defendants admit the allegations of Paragraph 30.

31. Defendants admit the allegations of Paragraph 31.

32. Defendants deny the allegations of Paragraph 32 and demand strict proof thereof.

33. Defendants deny the allegations of Paragraph 33 and demand strict proof thereof.

34. Defendants deny the allegations of Paragraph 34 and demand strict proof thereof.

35. Defendants deny the allegations of Paragraph 35 and demand strict proof thereof.

36. Defendants deny the allegations of Paragraph 36 and demand strict proof thereof.

37. Defendants deny the allegations of Paragraph 37 and demand strict proof thereof.

38. In response to Paragraph 38, Defendants incorporate their responses to the allegations in Paragraphs 1 – 37 as if set forth fully herein.

39. Defendants deny the allegations of Paragraph 39 and demand strict proof thereof.

40. Defendants deny the allegations of Paragraph 40 and demand strict proof thereof.

41. In response to Paragraph 41, Defendants incorporate their responses to the allegations in Paragraphs 1 – 37 as if set forth fully herein.

42. Defendants deny the allegations of Paragraph 42 and demand strict proof thereof.

43. Defendants deny the allegations of Paragraph 43 and demand strict proof thereof.

44. Defendants deny the allegations of Paragraph 44 and demand strict proof thereof.

45. Defendants deny the allegations of Paragraph 45 and demand strict proof thereof.

46. Defendants deny the allegations of Paragraph 46 and demand strict proof thereof.

47. In response to Paragraphs 47-54, Defendants do not respond to those allegations as that Count was dismissed by the Court.  *See* January 18, 2019 Order (DE 32).

48. In response to Paragraph 55, Defendants incorporate their responses to the allegations in Paragraphs 1 – 37 as if set forth fully herein.

49. Defendants deny the allegations of Paragraph 56 and demand strict proof thereof.

50. Defendants admit the allegations of Paragraph 57, except that the quotation contained in Paragraph 57 is not a complete statement of the requirements of the Injunction. Additionally, the Court has ruled that the alternative dispute resolution requirements must be completed prior to pursuing any claim based on alleged violations of the Injunction. *See* January 12, 2018 Order (DE 31).

51. Defendants deny the allegations of Paragraph 58, as this is not a complete statement of the alternative dispute resolution process set forth in the Injunction, and demand strict proof thereof.

52. In response to Paragraph 59, Defendants admit that ADT has provided a series of notices of violation to Defendants, but deny that ADT has complied with the requirements of the alternative dispute resolution process set forth in the Injunction.

53. Defendants deny the allegations of Paragraph 60 and demand strict proof thereof.

54. In response to Paragraph 61, Defendants admit that ADT has designated all documents, including, but not limited to the audio recordings, produced under the Injunction as attorneys' eyes only.  Defendants deny the remaining allegations of Paragraph 61 and demand strict proof thereof.

55. In response to Paragraph 62, Defendants admit that the parties completed the alternative dispute resolution process for the violations alleged in the first Notice of Violation and admit that there was no resolution of those violations.  Defendants deny all remaining allegations in Paragraph 62 and demand strict proof thereof.

56. Defendants deny the allegations of Paragraph 63 and demand strict proof thereof.

57. Defendants deny the allegations of Paragraph 64 and demand strict proof thereof.

58. Defendants deny the allegations of Paragraph 65 and demand strict proof thereof.

59. Defendants deny the allegations of Paragraph 66 and demand strict proof thereof.

60. Defendants deny the allegations of Paragraph 67 and demand strict proof thereof.

61. Defendants deny the allegations of Paragraph 68 and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense:  Personal Jurisdiction (All Counts)**

This Court does not have personal jurisdiction over Boerboel Protection, LLC, Rhodesian Protection, LLC, Alarm Protection Technology, LLC, Alarm Protection Management, LLC, Alarm Protection Alabama, LLC, Alarm Protection California, LLC, Alarm Protection Georgia, LLC, Alarm Protection Mississippi, LLC, Alarm Protection Tennessee, LLC, Alarm Protection Texas, LLC, Alarm Protection Alaska, LLC, Alarm Protection Arkansas, LLC, Alarm Protection Kentucky, LLC, Alarm Protection Oklahoma, LLC, and Adam Schanz.

**Second Affirmative Defense: Corporate Veil (All Counts)**

Plaintiffs' claims against Boerboel Protection LLC, Rhodesian Protection LLC, Alarm Protection Technology, LLC, Alarm Protection Management, LLC, and Adam Schanz fail to state a claim as a matter of law because "[l]imited liability is the rule not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted." *Anderson v. Abbott*, 321 U.S. 349, 361-62 (1944).  "Finding this arrangement useful to commerce, the Florida courts will not easily disregard this fiction." *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330 (11th Cir. 2011). "Courts have refused to pierce the corporate veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent and have a significant economic relationship with the parent." *Pearson v. Component Tech*, 247 F.3d 471, 485 (3rd Cir. 2001). It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been

used fraudulently or for an improper purpose; (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Lama*, 633 F.3d 1330, 1349.   The Second Amended Complaint does not plead any facts in support of these elements upon which the corporate veil could be pierced under the established standard of Florida law.   Likewise, the Alarm Protection State Entities are not liable for the acts of their Alarm Protection State Entity parent corporations or affiliates under the same doctrine.

### Third Affirmative Defense: Failure to Mitigate Damages (All Counts)

Plaintiffs have failed to mitigate their damages (if any exist).

### Fourth Affirmative Defense: Ripeness/Failure to Satisfy Condition Precedent (All Counts)

Plaintiffs' claims are precluded because Plaintiffs have not complied with the dispute resolution process mandated by the May 24, 2017, Settlement Agreement and the October 20, 2017, Permanent Injunction in *ADT II*.   The *ADT II* Settlement Agreement (DE 414) and the *ADT II* Permanent Injunction (DE 431) both mandate that ADT must *first* provide written notice to the Enjoined Parties of the alleged violations and further provide all facts and all recordings *in their entirety* supporting such violations to the Enjoined Parties, that the parties will work together in good faith to bring a prompt resolution of the dispute concerning the alleged violation, and, then, if the dispute is not resolved with 14 days of the written notice, the parties will mediate the alleged violations.   Only if the dispute is not resolved after appropriate written notice, provision of the materials supporting the violation in their entirety, a good faith effort to resolve the complaints, and mediation, ADT may then seek appropriate relief with the Court. (*ADT II* DE 431 at 3).   On January 11, 2018, the *ADT II* Court expressly rejected ADT's position that ADT "has the unilateral right to completely ignore the terms of the injunction and the terms of the parties' settlement agreement," and held that "[t]he settlement agreement and injunction

8

clearly require Plaintiff to follow a dispute resolution procedure if Plaintiff believes that the Court's injunction has been violated."  (*ADT II* DE 438 at 9-10).  The *ADT II* Court held that "[t]he injunction clearly and unambiguously requires Plaintiff to pursue its remedies for a violation of the injunction through certain defined procedures – any other interpretation of the injunction renders Plaintiffs' agreement to this provision meaningless and illusory."  (*ADT II* 438 at 10).  Despite these contractual and court-ordered requirements, ADT blatantly has ignored the dispute resolution procedures by engaging in scheduling depositions of particular customers (and attempting to elicit their sworn testimony) prior to sending Defendants the required written notice of these particular (alleged) violations and all facts and recordings in their entirety for meaningful review by Defendants and prior to any good faith discussions and mediation between the parties of these particular customer complaints.  ADT even has refused to allow management or sales representatives at Alder to review any of the materials.  As the Court noted on January 11, 2018, ADT cannot accept the benefits of the May 24, 2017, Settlement Agreement, without complying with the essential terms of that agreement.  To do so, "renders Plaintiffs' agreement to this provision meaningless and illusory."  (*ADT II* DE 438 at 10).

**Fifth Affirmative Defense: First Breach (All Counts)**

Plaintiffs' claims are barred by the first breach doctrine, as Plaintiffs have breached the May 24, 2017, Settlement Agreement, so that the Settlement Agreement (which included an injunction) cannot be enforced.  The Settlement Agreement entered by the parties in *ADT II* (DE 414) mandates that, before ADT files and motion for contempt or motion to enforce the injunction, ADT will provide written notice of the alleged violations and all facts and all recordings in their entirety supporting such violations to the Enjoined Parties, that the parties will work together in good faith to bring a prompt resolution of the dispute concerning the alleged

9

violation, and, then, if the dispute is not resolved with 14 days of the written notice, the parties will mediate the alleged violations. Only if the dispute is not resolved after mediation may ADT seek appropriate relief with the Court. (*ADT II* DE 431 at 3). On January 11, 2018, the *ADT II* Court rejected ADT's position that ADT has the unilateral right to completely ignore the terms of the parties' May 24, 2017, Settlement Agreement, and held that the settlement agreement clearly requires Plaintiff to follow a dispute resolution procedure. (*ADT II* DE 438 at 9-10). ADT first breached the May 24, 2017, Settlement Agreement in *ADT II* by failing to follow the dispute resolution procedures by engaging in scheduling depositions of customers (and attempting to elicit their sworn testimony) *prior to* sending Defendants the contractually required written notice of the alleged violations and all facts and recordings in their entirety for review by Defendants and *prior to* any good faith discussions and mediation between the parties of these particular customer complaints. Moreover, ADT has not provided the contractually required information for review by anyone other than Alder's attorneys, which was not a condition of the May 24, 2017, Settlement Agreement. As the Court noted on January 11, 2018, ADT cannot accept the benefits of the May 24, 2017, Settlement Agreement, without complying with the essential terms of that agreement. To do so, "renders Plaintiffs' agreement to this provision meaningless and illusory." (DE 438 at 10). Plaintiffs also have breached the implied covenant of good faith and fair dealing that is contained in the May 24, 2017, Settlement Agreement by operation of law. Therefore, Plaintiffs have first breached the May 24, 2017, Settlement Agreement, and Defendants are excused from further performance under the first breach doctrine.

### Sixth Affirmative Defense:  Unclean Hands (All Counts)

Plaintiffs' claims are barred by the doctrine of unclean hands for those particular customers for whom Plaintiffs have not complied with the dispute resolution requirements of the May 24, 2017, Settlement Agreement, which resulted in the October 20, 2017, Permanent Injunction. Plaintiffs, through their outside litigation counsel, have communicated directly with particular customers (including Alder customers) that allegedly have complained about Alder, and those communications occurred *prior to* ADT sending Defendants (i.e. the Enjoined Parties) any written notice of violation, engaging in good faith efforts to resolve those particular customers' complaints with Defendants, or conducting mediation regarding those particular customers' complaints. These premature *ex parte* contacts by ADT's outside litigation counsel have included inequitable and bad faith attempts to elicit testimony against Defendants and scheduling of depositions prior to sending Defendants any written notice of violation with respect to those particular customers. Plaintiffs also have refused in bad faith to allow the management and sales representatives of Alder to review any information that ADT was required to produce to the Enjoined Parties pursuant to the May 24, 2017, Settlement Agreement and the October 20, 2017, Permanent Injunction.  Defendants have been injured by Plaintiffs' inequitable and bad faith conduct by suffering customer contract cancellations resulting from Plaintiffs' misconduct, and by having to pay attorneys to attend for depositions of customers whose complaints were required to be first submitted to the dispute resolution process outlined in the parties' May 24, 2017, Settlement Agreement in open court. Defendants have been further injured by Alder's paying Plaintiffs $1 million in consideration for Plaintiffs' agreement to comply with the dispute resolution procedures agreed to in open court by Plaintiff on May 24, 2017.   Plaintiffs have rendered that agreement meaningless and illusory by ignoring its

provisions.  Despite this Court's admonition in *ADT II* that "[t]he settlement agreement and injunction clearly **require** Plaintiff to follow a dispute resolution procedure **if Plaintiff believes that the Court's injunction has been violated**" (ADT II 438 at 9-10; emphasis in original), Plaintiffs contemptuously have characterized the request that this court-ordered dispute resolution procedures be followed as an attempt "to frustrate ADT's efforts to prosecute its case and bring an end to Alder's unlawful conduct."  (See June 11, 2018, email from Chip Sander to Jennifer Nicole).  Such blatant disregard of the Court's mandate and the parties' Settlement Agreement constitutes knowing and willful misconduct by Plaintiffs.  The Court should exercise its broad equitable discretion to refuse aid to Plaintiffs, who have come to the Court tainted with inequitableness or bad faith relative to the matter in which Plaintiffs now seek relief, however improper may have been the *alleged* behavior of the Defendant.  *See generally*, *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).

**Seventh Affirmative Defense:  Issues Already Pending (Count IV)**

The issues raised in Count IV of ADT's Amended Complaint area already pending before the Court in *ADT, LLC v. Alder Holdings, LLC, et al*, Southern District of Florida, Case No. 9:17-cv-81237 ("*ADT III*").  Courts have held that there is "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Gibson v. Walgreen, Co.*, 2008 WL 11334987 *4 (M.D. Fla. Oct. 21, 2008) (dismissing action where "the present action involves the same controversy as the initial suit currently pending before this Court"); *Ferrara v. Munro*, 585 B.R. 269, 294 (D. Conn. 2018).  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may entrench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *Gibson*, 2008 WL 11334987 *4 (*quoting West Gulf Maritime Ass'n. v. ILA*

12

*Deep Sea Local 24*, 751 F. 2d 721,729 (5ᵗʰ Cir. 1985)). This is particularly true for a declaratory judgment claim, since the Declaratory Judgment Act uses permissive language. *See* 28 U.S.C. § 2201(a) (stating that federal courts "*may* declare the rights and other legal relations of any interested party" in a declaratory judgment action (emphasis added)).

Count IV of ADT's Second Amended Complaint (DE 7) seeks declaratory judgment that ADT has complied with the alternative dispute resolution requirements of the Injunction and that Defendants have not. These identical issues are raised in Defendants' affirmative defenses and counterclaim in *ADT III*. Specifically, Defendants allege that ADT breached the Settlement Agreement and failed to comply with the Injunction "by failing to follow the dispute resolution procedures by engaging in scheduling depositions of particular customers (and attempting to elicit their sworn testimony) *prior* to sending Defendants the contractually required written notice of the alleged violations and all facts and recordings in their entirety for meaningful review by Defendants and *prior to* any good faith discussions and mediation between the parties of these particular customer complaints." *See* Amended Answer at 16ᵗʰ Affirmative Defense (First Breach) (*ADT III* DE 91). Defendants' 15ᵗʰ Affirmative Defense in *ADT III* similarly alleges that ADT's claims (including Counts II and III, which are not for contempt) are not ripe since ADT failed to satisfy conditions precedent under the Injunction prior to filing the claims in *ADT III* based, in part, on the same alleged conduct. *See* Amended Answer at 15ᵗʰ Affirmative Defense (Ripeness/Failure to Satisfy Conditions Precedent) (*ADT III* DE 91). Finally, Count I of the Amended Counterclaim (*ADT III* DE 91) in the *ADT III* litigation alleges contempt of the Injunction based on ADT's failure to "comply with the court-mandated dispute resolution process in the Permanent Injunction by contemptuously interjecting customers into the lawsuit *prior to* the initiation and conclusion of the dispute resolution process for those particular

13

customers." *See* Amended Counterclaim at 39 (*ADT III* DE 91).  Alder alleges specifically that "ADT's litigators and representatives have called customers to discuss their complaints and potential depositions with them before the alternative dispute resolution process has begun, much less been completed." *Id.* at 38.

Since these issues will already be litigated in the *ADT III* case, ADT does not have the right to have them heard in this case as well.  As recognized by the *Gibson* court, litigating the same issues in two separate cases creates a substantial risk of inconsistency, both in interlocutory rulings and at trial, and is an efficient use of the parties' and this Court's resources. 2008 WL 11334987 *4.

**Eighth Affirmative Defense: Failure To State a Claim (Count IV)**

A declaratory judgment action is not the appropriate method to determine whether or not certain actions violate the Injunction.  As the concurring opinion in *Musselman* held:

> I write separately because I would affirm the District Court on the grounds that a declaratory judgment action is not the appropriate vehicle for determining the scope of a permanent injunction. The Declaratory Judgment Act was not intended to provide a route for circumventing the enforcement of an already-granted injunction. Allowing a declaratory judgment to issue for these purposes would significantly defang the injunction as a remedy, which would work a serious harm on the rule of law and the integrity of the judiciary. As such, no complaint filed for these purposes can properly state a claim for which declaratory relief may be granted, and I would affirm the order of dismissal on this basis.

*Musselman v. Blue Cross & Blue Shield of Alabama*, 684 F. App'x 824, 825 (11th Cir. 2017) (concurring opinion); *Gardner v. Cigna,* 477 Fed. Appx. 542, 544 (11th Cir. 2012) ("A declaratory judgment action is no substitute for following the established procedure for testing injunctions, to wit: contempt and sanctions").  This position is also supported by the well-established rule that "injunctions are enforced through the district court's civil contempt power."

*Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828–29 (11th Cir. 2010); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000).

Courts have also dismissed declaratory judgment claims where the "declaratory relief claim is similarly a breach of contract claim in disguise." *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, 2011 WL 13099891 *3 (S.D. Fla. Sept. 21, 2011). In *Parkway Baptist¸* the Court recognized that although the plaintiff "attempts to characterize the controversy involved as surrounding interpretation of the insurance policy. Yet, at issue is not whether the contract affords coverage for Hurricane Wilma's damage to the property. The issue is whether the Parties have complied with their various responsibilities under the insurance policy." *Id.*

Here, Count IV does not properly state a claim for declaratory relief, but, as in *Parkway Baptist*, is actually a request for a determination of whether or not any of the parties have breached the Settlement Agreement by failing to comply with the Injunction.

**Ninth Affirmative Defense: Failure to State a Claim (Count II)**

Under Florida law, the elements of specific performance are that (1) the plaintiff is clearly entitled to specific performance; (2) there is no adequate remedy at law and (3) justice requires specific performance. *See La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332 (S. D. Fla. 2010). Where the party is "ultimately seeking to recover monetary damages resulting from Defendant's alleged failure to live up to its insurance contract, it is unclear that Plaintiff can demonstrate there is no adequate remedy at law." *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, 2011 WL 13099891 *3 (S.D. Fla. September 21, 2011). Here, ADT seeks money as its damages for the alleged breach of the agreement, so that it fails to state a claim.

15

**Tenth Affirmative Defense: Breach of the Implied Covenant of Good Faith and Fair Dealing (All Counts)**

ADT has breached the implied covenant of good faith and fair dealing by taking actions designed to frustrate the purpose of the Settlement Agreement. Specifically, ADT has taken steps to (a) preclude the Enjoined Parties from reviewing the documents, including, but not limited to, contracts, mastermind screenshots, deceptive sales reports and audio recordings, produced pursuant to the requirements of the Injunction by designating them as attorneys' eyes only; and (b) to squelch any possibility of resolution of customer disputes by involving customers in the litigation prior to completion of the alternative dispute resolution requirements under the Injunction.

**Eleventh Affirmative Defense: Failure to State a Claim (Count IV)**

ADT's request for declaratory relief is improper because it simply seeks a judicial review of factual issues, which is not appropriate.  Moreover, there is no claim by ADT that the language of the Injunction or Settlement Agreement is vague or ambiguous in its Count IV, so that this is just another way of seeking a determination of whether or not any of the parties are in breach, which is not the proper use of declaratory judgment.

**Twelfth Affirmative Defense: Failure of Consideration (All Counts)**

The consideration for Defendants to enter into the Settlement Agreement was ADT's agreement to comply with the alternative dispute resolution requirements of the Injunction.  ADT failed to comply with those, so that there is a failure of consideration.

**Thirteenth Affirmative Defense: Failure to Comply With Condition Precedent (Count IV)**

Under the Injunction, Defendants are not required to move forward with the alternative dispute resolution proceedings until ADT performs its initial obligations under the Injunction, namely:

> ORDERED AND ADJUDGED that in the event ADT believes that the Enjoined Parties have violated the injunction, the parties will engage in the following dispute resolution process before ADT files any motion for contempt or any motion to enforce the injunction:

> a. ADT will provide written notice to the Enjoined Parties, through their Legal Department, or any other such individual that the Enjoined Parties shall designate, of the alleged violation and the facts and all recordings in their entirety supporting such violation;

Here, ADT failed to comply with sub-section (a) of the alternative dispute resolution proceedings, so that the parties could not move to the requirements of sub-section (b). Namely, ADT failed to comply by failing to provide "the facts and all recordings in their entirety" to the Enjoined Parties. Instead, ADT designated all documents provided as attorneys' eyes only, so that the Enjoined Parties are not permitted to review them.

## <u>REQUEST FOR ATTORNEYS' FEES</u>

Defendants have been forced to retain the undersigned counsel to represent them in their defense of these claims. Defendants therefore respectfully request that the Court award Defendants their reasonable attorneys' fees and costs pursuant to the Settlement Agreement, the Injunction, and/or the Court's equitable powers.

*DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.*

*/s/ Jennifer Nicole*
Jennifer Nicole, Esq.

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to C. Sanders McNew, Esq., 2385 NW Executive Center Drive, Suite 100, Boca Raton, FL 33431 (mcnew@mcnew.net).

GUNSTER, YOAKLEY & STEWART, P.A.
*Attorneys for Defendants*
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL  33301
Telephone:    954-462-2000
Facsimile:    954-523-1722

By: */s/ Jennifer Nicole*
        Michael W. Marcil, Esq.
        Florida Bar No.: 091723
        mmarcil@gunster.com
        Jennifer Nicole, Esq.
        Florida Bar No.: 00114578
        jnicole@gunster.com

FTL_ACTIVE 5253182.1

18